**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

|  |  |  |
|---|---|---|
| | * | |
| **TRUSTEES OF THE NATIONAL** | * | |
| **ASBESTOS WORKERS MEDICAL** | * | |
| **FUND, et al.,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| v. | * | **Civil Action No.: PWG-13-3586** |
| | * | |
| **STOTTS MECHANICAL** | * | |
| **INSULATION, INC., et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |
| | ****** | |

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Entry of Default Judgment

(the "Motion") (ECF No. 7) and Correspondence Correcting Earlier Submission ("Motion

Supplement") (ECF No. 12)[1] filed by Trustees of the National Asbestos Workers Medical Fund;

Trustees of the National Asbestos Workers Pension Fund; Trustees of the National Asbestos

Workers Local Union No. 80 Supplemental Medical Fund, and Trustees of the National Asbestos

Workers Local Union No. 80 Supplemental Pension Fund (collectively "Asbestos Worker

Funds" or "Plaintiffs").  Plaintiffs brought this action under the Employee Retirement Income

Security Act of 1974 ("ERISA") to recover delinquent pension fund contributions and related

relief from Stotts Mechanical Insulation, Inc. ("Stotts Mechanical") and Linda Stotts

(collectively "Defendants").  *See* 29 U.S.C. § 1001 (2012).  The Clerk entered default against

---

[1] In support of their request for delinquent contributions, Plaintiffs submitted the declaration of Simone L. Rockstroh regarding the factual and procedural background, Rockstroh Decl. ¶ 1 (ECF No. 7-4), and the declaration of Renee Perenti regarding the veracity of source documents, Perenti Decl. ¶ 1 (ECF No. 12).  Plaintiffs filed both the Perenti Declaration and corresponding source documents under Correspondence Correcting Earlier Submission (ECF No. 12).  The Court shall refer to these documents collectively as the Motion Supplement, and separately as the Perenti Declaration (ECF No. 12) and by their individual exhibit letters, s*ee, e.g.*, Mot. Suppl. Ex. A (ECF No. 12-1), Ex. B (ECF No. 12-2), Ex. C (ECF No. 12-3), Ex. D (ECF No. 12-4), Ex. E (ECF No. 12-5).

Defendants on April 8, 2014 (ECF No. 8).  Defendants have not filed a response and the time for

doing so has passed.  *See* Local Rule 105.2(a) (D. Md.).

Pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, the Honorable Paul W. Grimm

referred this matter to me for making a Report and Recommendation concerning default

judgment and/or damages.  For the reasons stated herein, I recommend the Court GRANT the

Motion and award Plaintiffs damages and associated relief as enumerated below.

## I.     Factual and Procedural Background

Plaintiffs filed a Complaint on November 26, 2013 under ERISA, 29 U.S.C. § 1001, to

collect contributions, damages, and other amounts owed by Defendants pursuant to their

Collective Bargaining Agreements and Settlement Agreement.  Compl. ¶¶ 3–6 (ECF No. 1);

Mot. Suppl. Ex. A (ECF No. 12-1), Ex. B (ECF No. 12-2), Ex. C (ECF No. 12-3).  The Asbestos

Worker Funds qualify as multiemployer benefit plans under section 2 of ERISA, 29 U.S.C. §

1002, and were established pursuant to an agreement entered into between Stotts Mechanical and

the Heat and Frost Insulators Local Union 50 and Local Union 80.  Rockstroh Decl. ¶ 2 (ECF

No. 7-4).  Stotts Mechanical is an employer that agreed to contribute to the Asbestos Worker

Funds on behalf of its employees and in consonance with its Collective Bargaining Agreements,

which include the Restated Agreements and Declarations of Trust ("Trust Agreements").

Rockstroh Decl. ¶¶ 3, 5; Mot. Suppl. Ex. D (ECF No. 12-4), Ex. E (ECF No. 12-5).

Stotts Mechanical experienced substantial difficulty making the required benefit

contributions.  Rockstroh Decl. ¶ 6.  In response to these difficulties, the parties entered into a

Settlement Agreement on October 16, 2013 allowing for systematic payment over time of all

amounts owed.  Rockstroh Decl. ¶ 6; Mot. Suppl. Ex. A.  The Settlement Agreement required

payment of $62,014.74 in contributions and accrued interest owed over a period of four months

with interest assessed on the payments at the rate of 7% per annum.  Rockstroh Decl. ¶ 6; Mot.

Suppl. Ex. A ¶ 3.  The Settlement Agreement further provided that Stotts Mechanical remain

current in all future contributions for the duration of the settlement and file all monthly reports

and payments on time as required by the Trust Agreements.  Rockstroh Decl. ¶ 6; Mot. Suppl.

Ex. A ¶ 8.  Linda Stotts executed the Settlement Agreement, committing herself to act as

guarantor for all amounts owed by Stotts Mechanical, including all future monthly contributions

that become due during the life of the Settlement Agreement.[2]  Rockstroh Decl. ¶ 7; Mot. Suppl.

Ex. A ¶ 11.

Should Stotts Mechanical fail to contribute, the Trust Agreements authorize the Asbestos

Worker Funds to project the delinquency amount, calculated as the greater of the average of the

monthly payments or reports that Stotts Mechanical actually submitted for either the last three

months or the last twelve months.  *See* Rockstroh Decl. ¶ 11; Mot. Suppl. Ex. D, art. 7, § 7; Mot.

Suppl. Ex. E, art. 7, § 7.  The Asbestos Worker Funds are also authorized to collect interest on

the delinquency amount.  *See* Rockstroh Decl. ¶¶ 14, 16.  This amount is calculated differently

for the Asbestos Worker Medical Funds and the Asbestos Worker Pension Funds according to

their Trust Agreements.  *See* Rockstroh Decl. ¶¶ 14, 16.  The Asbestos Worker Medical Funds

may collect interest at a rate of 8% from the due date to the date of payment, interest at a rate of

1.5% per month, or double interest as provided in the Trust Agreements.  Rockstroh Decl. ¶ 14;

Mot. Suppl. Ex. E, art. 7, § 6.  The Asbestos Worker Pension Funds may collect interest at a rate

of 8% from the due date to the date of payment or double interest as provided in the Trust

Agreements.  Rockstroh Decl. ¶ 16; Mot. Suppl. Ex. D, art. 7, § 6.

---

[2] Plaintiffs submitted proper declaration to support their contention that "Defendant Linda Stotts is not in the military service of the United States of America (or in the military service of any nation allied with the United States of America) and is not a member of the military reserves who has been ordered to report for military service." Gilligan Decl. ¶ 2 (ECF No. 7-2).

Plaintiffs served Defendants on February 11, 2014 (ECF Nos. 4, 5), alleging Stotts Mechanical breached its Collective Bargaining Agreements and Settlement Agreement by failing to pay the contribution amounts due to the Asbestos Worker Funds, and holding Linda Stotts liable for a portion of that delinquency under the terms of the Settlement Agreement.  Compl. ¶¶ 3–6.  Plaintiffs allege Stotts Mechanical failed to make the third settlement payment due on January l, 2014; failed to make the fourth settlement payment due on February 1, 2014; failed to make contributions and to submit reports for February 2014; was late making contributions for September 2013 through November 2013; and is late making contributions for February 2014. Rockstroh Decl. ¶¶ 8, 10, 13.  Defendants did not file an Answer or otherwise defend against allegations in the Complaint.  Plaintiffs moved for Entry of Default (ECF No. 6) on March 27, 2014, and the Clerk entered an Order of Default (ECF No. 8) on April 8, 2014.

## II.     Standard of Review

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments.  Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  If, after entry of default, the plaintiff's complaint does not specify a "sum certain" amount of damages, the Court may enter a default judgment against the defendant pursuant to Rule 55(b)(2).  In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability.  *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001).  However, "liability is not deemed established simply because of the default . . . and the Court, in its discretion, may require some proof of the facts that must be established in order to determine liability."  *Id.*  The Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip.*

*Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but finds that default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the plaintiff establishes liability, the Court then turns to the determination of damages. *See Ryan*, 253 F.3d at 780–81.  The Court must make an independent determination regarding damages and cannot accept as true factual allegations.  *See Lawbaugh*, 359 F. Supp. 2d at 422. Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default, stating that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c). While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so.  *See, e.g.*, *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment was entered against defendant because plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages it sought); *DirecTV, Inc. v. Yancey*, No. Civ. A. 404CV00011, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that a hearing was "not required to enter default judgment" because plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits").  The Court may rely instead on affidavits or documentary evidence of record to determine the appropriate sum.  *See Monge*, 751 F. Supp. 2d at 794–95.

**III.    Discussion**

More than six months passed since Plaintiffs served the Complaint on Defendants, yet Defendants failed to plead or otherwise assert a defense.  Therefore, the Court deems all of Plaintiffs' factual allegations in the Complaint not pertaining to damages admitted.  Fed. R. Civ. P. 8(b)(6); *Ryan*, 253 F.3d at 780.  Plaintiffs moved for both an entry of default and a default judgment on March 27, 2014, and Defendants still did not respond.  It is within the Court's discretion to grant default judgment when a defendant is unresponsive.  *See* Fed. R. Civ. P. 55(a)–(b); *see also*, *Park Co. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (upholding a default judgment when the defendant lost its summons and did not respond within the proper period); *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405–06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *see also*, *Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment was appropriate because defendant was "unresponsive for more than a year" after denial of his motion to dismiss, even though he was properly served with plaintiff's motions for entry of default and default judgment).

For the reasons stated below, it is my recommendation that Plaintiffs are entitled to default judgment.  In determining damages, I find that no evidentiary hearing is necessary and instead rely on the declarations and other evidence of record, such as a delinquency calculation analysis and itemization of legal fees and costs, to determine the appropriate sum.

**A.  Default Judgment**

In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in the Complaint as to liability.  *See Ryan,* 253 F.3d at 780–81.  Nevertheless,

the Court must determine "whether the well-pleaded allegations . . . support the relief sought in

this action." *Id.* at 780. Plaintiffs' allegations of unpaid contributions support its cause of action

under ERISA, the Collective Bargaining Agreements, and Settlement Agreement. Section 515

of ERISA states:

> Every employer who is obligated to make contributions to a multiemployer plan
> under the terms of the plan or under the terms of a collectively bargained
> agreement shall, to the extent not inconsistent with law, make such contributions
> in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Moreover, section 502(g) of ERISA states that in an action under section 515

of ERISA, in which judgment is awarded in favor of the pension plan, a court shall award: (1)

unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages in "an

amount equal to the greater of . . . (i) interest on the unpaid contributions, or . . . (ii) liquidated

damages provided for under the plan not in excess of 20 percent" of the unpaid contributions; (4)

reasonable attorneys' fees and costs; and (5) "such other legal and equitable relief as the court

deems appropriate." 29 U.S.C. § 1132(g)(2).

The Supreme Court has found that these sections of ERISA "provide trustees of

multiemployer benefit plans with an effective federal remedy to collect delinquent

contributions." *Laborers' Health & Welfare Trust Fund for Northern Cal. v. Advanced

Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988). The Fourth Circuit has likewise found that

in an action based on section 515 of ERISA, "a multiemployer plan can enforce, as written, the

contribution requirements found in the controlling documents." *Int'l Painters & Allied Trades

Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685–86 (D.

Md. 2013) (quoting *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's

Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997)).

Plaintiffs show that, under the Collective Bargaining Agreements, Stotts Mechanical agreed to make full and timely payment on a monthly basis to the Asbestos Worker Funds. Rockstroh Decl. ¶ 3; Mot. Suppl. Ex. B, Ex. C.  Stotts Mechanical also agreed to pay interest and attorneys' fees and costs in the event of default.  Mot. Mem. 2.  Plaintiffs show that, under the Settlement Agreement and as a result of difficulty Stotts Mechanical experienced in making the required benefit contributions, Stotts Mechanical agreed to make systematic payments over time of all delinquent contributions owed.  Rockstroh Decl. ¶ 6; Mot. Suppl. Ex. A ¶ 3.  In addition, under the Settlement Agreement and beginning on October 16, 2013, Linda Stotts agreed to personal liability for all amounts owed by Stotts Mechanical to the Asbestos Worker Funds.  Rockstroh Decl. ¶¶ 6, 18; Mot. Suppl. Ex. A ¶ 11.  Plaintiffs filed the declaration of Simone L. Rockstroh—President of Carday Associates ("Carday"), the Administrative Agent for the Asbestos Worker Funds—in support of these claims.  Rockstroh Decl. ¶ 1.  Rockstroh states that Stotts Mechanical owes $51,332.87, of which Linda Stotts is liable for $49,582.86.  Mot. ¶¶ 1–2; Rockstroh Decl. ¶ 18.  Therefore, Plaintiffs' well-pleaded factual allegations support the relief requested and it is my recommendation that the Court grant the Motion.

**B. Damages**

Plaintiffs seek damages pursuant to section 502(g) of ERISA and assert that Stotts Mechanical owes $51,332.87 total in delinquent contributions: $33,065.73 due to a default on the Settlement Agreement; $15,918.17 for contributions owed; $598.97 in interest on unpaid contributions; and $1,750.00 in attorneys' fees and costs.  Mot. ¶¶ 1–4.  Plaintiffs also assert that, under the terms of the Settlement Agreement, Linda Stotts is personally liable for $49,582.86 of the total delinquent contributions.  Rockstroh Decl. ¶ 18; Mot. Suppl. Ex. A ¶ 11.

In support of their request for delinquent contributions, Plaintiffs submitted the

declarations of Rockstroh and Renee Perenti, Vice President of Carday, as well as the Collective

Bargaining Agreements, Trust Agreements, and Settlement Agreement at issue.  Rockstroh Decl.

¶ 1; Perenti Decl. ¶ 1 (ECF No. 12); Mot. Suppl. Ex. A, Ex. B, Ex. C, Ex. D, Ex. E.  In support

of their request for reasonable attorneys' fees and costs, Plaintiffs' counsel Charles W. Gilligan

submitted a declaration.  Gilligan Decl. ¶ 1 (ECF No. 7-6).  I accept the sworn representations of

both Rockstroh and Gilligan as to the contributions and attorneys' fees and costs owed by

Defendants and find there is adequate evidence with respect to damages to make a hearing

unnecessary.  See *Monge*, 751 F. Supp. 2d at 794–96.  For the reasons enumerated below and as

of the date of the Motion, I recommend the Court award judgment in favor of Plaintiffs in the

total amount of $51,290.37.

          *a)   Settlement Agreement*

On October 16, 2013, Stotts Mechanical entered into a Settlement Agreement allowing

for the payment of $62,014.74 in contributions and accrued interest, assessed at the rate of 7%

per annum, to be paid over a period of four months.  Rockstroh Decl. ¶ 6; Mot. Suppl. Ex. A ¶ 3.

Rockstroh confirms that she has personal knowledge of the Settlement Agreement at issue in this

case, and that Stotts Mechanical is in default for a total of $33,065.73 by failing to make the third

settlement payment due on January l, 2014 and the fourth settlement payment due on February 1,

2014.  Mot. ¶ 1; Rockstroh Decl. ¶ 8.  After reviewing the evidence of record, I recommend the

Court award Plaintiffs $33,065.73 in delinquent contributions under the terms of the Settlement

Agreement.

b) *Unpaid Contributions*

Rockstroh confirms that she has personal knowledge of the Collective Bargaining

Agreements and Trust Agreements at issue in this case, and that Stotts Mechanical owes

$15,918.17 in delinquent contributions for February 2014. Rockstroh Decl. ¶ 2. The Trust

Agreements authorize the Asbestos Worker Funds to project the delinquency amount in the event

of a delinquency, calculated as the greater of the average of the monthly payments or reports that

Stotts Mechanical actually submitted for the last three months or the last twelve months.

Rockstroh Decl. ¶ 11; Mot. Suppl. Ex. D, art. 7, § 7; Mot. Suppl. Ex. E, art. 7, § 7. The Asbestos

Worker Funds used reporting forms Stotts Mechanical submitted for the three months prior to

filing of the Complaint to determine that the projected delinquency for February 2014 is

$15,987.17. Rockstroh Decl. ¶ 12. After reviewing the evidence of record, I recommend the

Court award Plaintiffs $15,987.17 in unpaid contributions.

c) *Accrued Interest*

Plaintiffs are entitled to interest on any unpaid contributions because Stotts Mechanical

was late making contributions to the Asbestos Worker Funds for the period of September 2013

through November 2013 and is late for February 2014. Rockstroh Decl. ¶ 13. Section 502 of

ERISA provides for an award of interest on unpaid contributions "determined by using the rate

provided under the plan, or, if none, the rate prescribed under the Internal Revenue Code." 29

U.S.C. § 1132(g)(2). Pursuant to the Trust Agreements, Stotts Mechanical is obligated to pay the

Asbestos Worker Medical Funds $368.21 in interest, assessed at a rate of 1.5%, Mot. Suppl. Ex.

E, art. 7, § 6, and the Asbestos Worker Pension Funds $230.76 in interest, assessed in accordance

with the Trust Agreements, Rockstroh Decl. ¶¶ 14–17; Mot. Suppl. Ex. D, art. 7, § 6. After

reviewing the evidence of record, I recommend the Court award Plaintiffs $598.97 in interest.

*d)* *Attorneys' Fees and Costs*

The Trust Agreements also provide for payment of attorneys' fees and costs incurred in the Asbestos Worker Funds's collection of a delinquency, and Plaintiffs' counsel requests reimbursement for $1,750.00 in attorneys' fees and costs.  Mot. ¶ 4; Gilligan Decl. ¶ 6; Mot. Suppl. Ex. D, art. 7, § 6; Mot. Suppl. Ex. E, art. 7, § 6.  In an ERISA action, a district court may award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved some relative degree of success on the merits." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010).  In addition, under Rule 37 of the Federal Rules of Civil Procedure, the Court must require the party "whose conduct necessitated the [discovery] motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable attorneys' fees."  Fed. R. Civ. P. 37(a)(5)(A).

The Supreme Court has established a method, commonly called the "lodestar," for determining a reasonable fee.  The starting point in the lodestar calculation is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see Robinson v. Equifax Info. Servs.*, *LLC*, 560 F.3d 235, 243 (4th Cir. 2009).  The Court has endorsed a list of twelve factors, first articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which aid a court in determining a reasonable fee.  These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717–19. The Fourth Circuit has directed courts to consider these twelve factors when calculating the lodestar amount. *Robinson*, 560 F.3d at 243–44.

A party seeking a fee award "must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which she seeks an award. *See id.* at 244; *Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). However, failing to provide affidavits from independent counsel is not fatal, for the court may rely on its own knowledge of the market in determining reasonable fees for that community. The Local Rules provide Rules and Guidelines ("Local Guidelines") for determining an attorney's reasonably hourly rate in Maryland:

   a. Lawyers admitted to the bar for less than five (5) years: $150–190.
   b. Lawyers admitted to the bar for five (5) to eight (8) years: $165–250.
   c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225–300.
   d. Lawyers admitted to the bar for fifteen (15) years or more: $275–400.
   e. Paralegals and law clerks: $95–115.

Local Rule App. B, 3 (D. Md.).[3]

Plainitffs' counsel, a partner at the law firm of O'Donoghue & O'Donoghue, filed a declaration to support his contention that Plaintiffs have incurred $1,113.90 in attorneys' fees and costs. Gilligan Decl. ¶¶ 1, 6. *Johnson* factors one and nine are most persuasive in evaluating Plaintiffs' request for attorneys' fees and costs. Factor one is relevant because Plaintiffs' attorney spent time and effort preparing the Motion. Factor nine is relevant because a more experienced attorney is expected to perform more efficiently. *See Int'l Ass'n of Machinists & Aerospace Workers v. Wener-Masuda*, 390 F. Supp. 2d 479, 491 (D. Md. 2005). Plaintiff's counsel billed at an hourly rate of $220.00 and the paralegal billed at an hourly rate of $120.00. Gilligan Decl. ¶ 4. Plaintiffs' counsel failed to provide information indicating the experience

---

[3] The Local Guidelines for attorneys' fees were modified in July 2014. The modified hourly rates are not applicable to this motion.

level of the attorneys or paralegals.  However, an internet search reveals that Mr. Gilligan has

been a partner at the firm in which he works since 1993.  The Local Guidelines advise that a

reasonable hourly rate for an attorney admitted to the bar for fifteen or more years is $275.00 to

$400.00; therefore, Mr. Gilligan's rate of $220.00 per hour is reasonable.  *See* Local Rule App.

B, 3(d).  Additionally, the Local Guidelines advise that a reasonable hourly rate for a paralegal is

somewhere between $95.00 and $115.00.  *Id.* at 3(e).  The paralegal's hourly rate of $120.00

exceeds the range of reasonable rates and must be adjusted.  I recommend amending the

paralegal's hourly rate to $115.00.

Plaintiffs' counsel provided a detailed itemization of legal fees and costs.  *See* Mot. Ex. D

(ECF No. 7-7).  The records show that Mr. Gilligan billed 0.5 hours and that the paralegal billed

8.5 hours in the case.  Mot. Ex. D.  These hours are reasonable considering the amount of labor

required to initiate the case, take the necessary procedural steps in moving for default judgment,

and prepare sufficient evidence in support of the damages requested.  Moreover, the requested

legal costs in the amount of $400.00 for filing and $220.00 for server fees are appropriate.

Gilligan Decl. ¶ 5.  Applying the lodestar method and the Local Guidelines to Plaintiffs' request,

I recommend that the Court award Plaintiffs $1,087.50 in attorneys' fees and $620.00 in costs,

totaling $1,707.50.

## IV.    Conclusion

Based on the foregoing, it is my recommendation that the Court GRANT Plaintiffs'

Motion for Default Judgment, enter judgment against Stotts Mechanical for the awards

14

enumerated above in the total amount of $51,290.37, and hold Linda Stotts liable for $49,582.86 of that total.

August 22, 2014                                          _____/s/_____
                                                         Charles B. Day
                                                         United States Magistrate Judge

CBD/slr